101 So.2d 640

Henry CLEMENTS

v.

STATE.

2 Div. 955.

Court of Appeals of Alabama.

March 11, 1958.

Walter G. Woods, Tuscaloosa, for appellant.

John Patterson, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

CATES, Judge.

Clements appeals from a judgment of conviction of possessing a still, with a sentence of imprisonment for two years.

January 24, 1957, four deputy sheriffs of Hale County came upon a still some eight or ten miles east of Moundville, near the home of the defendant, but not on his land. One of the deputies testified it was a complete still. While the officers were hiding, Clements came up to the still, stopped before he got to it, "looked all around and in about five minutes he came up to it and looked all around and examined it and left."

Two of the officers went back to the still five days later (January 29) and

found the apparatus about charged for a run: hiding out in a quarter circle, they soon descried Clements coming into the stillyard—

"Q. What did Mr. Clements do when he came to the still? A. When he came the first time I seen him he had a sack wrapped kind of around his neck, and he came up to the still and he laid it down. He untied the sack and then he commenced to open the sack of rye that was at the still.

"Q. What else did he do? A. About that time I got up and told him he was under arrest."

There was evidence, including the firing of several charges of bird shot which lodged in Clements's back, from which the jury could infer flight.

As to the apparatus being a complete still within the requirements of Code 1940, T. 29, § 131, the State adduced proof that on January 24 it was a still. Raymond Robertson, one of the deputies, in describing the still as of January 29, testified:

"There was some sugar and one sack of rye had been moved into the still. And there was a hose pipe run over into the pot, and it lacked being full about eighteen inches. * * *

\* \* \* \* \* \*

"Q. "Where was the condenser, if there was, at this particular place? A. It was at the still?

"Q. Was it connected up? A. It was sitting there ready to connect up.

"Q. It wasn't connected, was it? A. No.

"Q. Did you examine it to see whether it was full of holes, or not? A. I did. You don't connect one up until you get ready to run it."

Mr. Robertson's redirect testimony concluded:

"Q. You testify the first time you went that was Thursday, January 24th, and you arrested Mr. Clements January 29th, the next Tuesday? A. That is right.

"Q. Did you go to the still between January 24th and January 29th? A. Yes, sir.

"Q. How many times did you go there then? A. I went two times.

"Q. Two times in between? A. Yes, sir.

"Q. What did you do when you went out there? A. We went up there, went back Friday to see whether it had been run, or not.

"The Court: What month was that?

"Mr. McLeod: That was Friday, January 25th.

"A. Friday following the Thursday, and it has been run. It was cooled down, so we wanted to check to see when it was going to be charged up again, and we were going to watch and me and Deputy Holloway went back there on Sunday morning and it was still just like it was on Friday, just still sitting there; and then me and Mr. Mills went in on Tuesday.

"Q. January 29th? A. January 29th."

Mr. Searcy Mills, the other officer, testified:

"We surrounded the still. We found out water was running into the drum, and he was going to lay there, and, of course, you see we surrounded the still. He seen the water was running in the cooker, and we surrounded the still.

"The Court: Water was running into the cooker?

"The Witness: Yes, sir, running into the still, yes, sir."

Clements took the stand in his own behalf and testified he had been going

388

along an old logging road toward some adjoining timber of his brother-in-law when he came upon the still: without warning, he was knocked down by a load of bird shot in the back, and turning he saw Mr. Mills, one of the deputies, standing over him with a smoking shotgun. Though the place of the raid was but a mile or so from the open road, Clements testified Mills and Robertson walked him five or six miles "around the woods" before taking him to a doctor.

The sole question argued on appeal by Clements is the refusal of charge 2, viz.:

"The Court charges you gentlemen of the jury that Count two carries with it a lesser included offense of attempting to possess a still or apparatus to be used for the purpose of manufacturing prohibited liquors or beverages."

Code 1940, T. 14, § 42, provides:

"Upon the trial of an indictment for any offense, the jury may find the accused not guilty of the offense charged in the indictment, but, if the evidence warrants it, guilty of an attempt to commit such offense, without any special count in the indictment for such attempt."

The Attorney General correctly points out that the elements of attempt are intent and an overt act falling short of consummation, citing Miller v. State, 37 Ala.App. 470, 70 So.2d 811. The authorities are careful to distinguish between preparation and attempt. From the nature of the concept of possession in our law, we doubt if it is susceptible of halfway measures. Regardless of the problem, we consider charge 2 abstract under the evidence, Broadway v. State, 36 Ala.App. 542, 60 So.2d 697.

Code 1940, T. 15, § 389, prescribes our duty thus:

"In cases taken to the * * * court of appeals * * * no assignment of errors or joinder in errors is

necessary; but the court must consider all questions apparent on the record * * * and must render such judgment as the law demands. But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant."

We have searched the record and note that Clements moved the court below that the State be required to elect as to whether it was trying him for possession on the 24th of January or the 29th of January. We hold the trial judge correctly overruled this motion.

The only State witness to flatfootedly give an opinion that the apparatus was a complete still was Mr. Holloway. Holloway only saw Clements at the still on January 24. The evidence of Clements's activities on the 24th were too skimpy to show that quantum of interest in and operation of a still which, as a matter law, would impute possession of a still: coupled with the State's evidence (as of the 29th) of his carrying the sack of sugar and opening the sack of rye at the site, however, the activities on both days plus the clear-cut testimony of the apparatus being a complete still on the 24th and of the officers' visits in between all made enough of a case to go to the jury.

The facts here are much like those in Lockhart v. State, 21 Ala.App. 75, 105 So. 431, where it was contended—as it was by Clements in the court below—that the State should elect as to which "possession" the defendant should be tried on. Judge Bricken, after pointing out that this was a continuing offense, went on to say:

"* * * The evidence complained of tended to show that the still in question was the same still found near the field of defendant in operation as testified to originally by the several witnesses for the state. If this is true, the state could properly be permitted to

show possession of the same still at different times and different places; a conviction for one offense only being insisted upon."

Affirmed.